**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **RICHARD MAHANEY and** | ) | **CIVIL ACTION NO.  5:15-cv-02710** |
| **SUZI MAHANEY** | ) | |
| | ) | |
| **VERSUS** | ) | **JUDGE FOOTE** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | **MAGISTRATE JUDGE HAYES** |

**REPLY IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Now comes the defendant, the United States of America, through counsel, and for its Reply in support of its Motion for Summary Judgment, hereby states as follows:

**INTRODUCTION**

Plaintiff' Response cited no admissible evidence of record to overcome summary judgment. Plaintiffs presented two arguments opposing summary judgment. First, plaintiffs assert that Dr. Smith cannot be liable because he was not in the operating room when Mr. Mahaney's alleged injury occurred. However, physicians are often responsible for actions they order, but do not personally carry out. It is the physician's medical judgment, not merely his presence, that is scrutinized in a medical negligence action. In this case, plaintiffs have raised criticisms regarding decisions solely made by Dr. Smith, according to all evidence of record, and the United States cannot be liable for Dr. Smith's decisions.

Second, plaintiffs argue that the United States admitted to liability for Dr. Haydel in a Compensation & Pension (C & P) exam for Mr. Mahaney's 1151 disability benefits. However, because of the drastically different standards involved in the 1151 disability benefits process, courts prohibit using the findings in FTCA medical malpractice actions to establish liability. Moreover, the C & P exam is not admissible pursuant federal and state evidentiary prerequisites,

and thus cannot be used in defense of summary judgment. Plaintiffs have offered no admissible evidence to satisfy their burden, and summary judgment is appropriate.

1. **The VA's 1151 disability benefit findings as to Mr. Mahaney cannot be used as an admission of negligence in an FTCA medical malpractice action.**

Mr. Mahaney applied for 1151 disability benefits following the injury he sustained during the ACDF procedure. On August 14, 2013, Nurse Practitioner Sharon Coleman (a VA employee) conducted a Compensation and Pension (C & P) Examination to aid Mr. Mahaney in obtaining those benefits. Plaintiffs err in proposing that the VA admitted liability by way of the C & P exam findings. (Doc. 30, Pls.' Ex. 1). Congress created 1151 benefits to provide swift compensation to injured veterans, and the process for awarding benefits heavily favors the claimant. Because of the nature of the benefits claim process, courts preclude use of them in FTCA actions to prove medical negligence. *Littlejohn v. United States*, 321 F.3d 915 (9th Cir. 2003).

Veterans who suffer injuries during the course of medical treatment at the VA have two compensatory options – (1) file a tort claim pursuant to the FTCA, and/or (2) file a benefits claim pursuant to 38 U.S.C. § 1151. (*See* brochure, Exhibit 1). An 1151 claim provides modest monthly compensation for veterans disabled by treatment at the VA. The benefits are acquired through an administrative review process, which involves a "low standard of proof" and "claimant-friendly procedures." *Littlejohn,* 321 F.3d at 922. The emphasis of the review is on the patient's injury, not the VA's fault. *Id.* The VA, by express statute, has no strong incentive to aggressively litigate claims by veterans for 1151 disability benefits.

The claimant need only present an 1151 claim, and then the VA must assist the veteran in developing facts pertinent to the claim. 38 U.S.C. § 5107. "Congressional mandate requires that the VA operate a unique system of processing and adjudicating claims for benefits that is both

claimant friendly and non-adversarial." *Hayre v. West*, 188 F.3d 1327, 1334 (Fed. Cir. 1999), *overruled on other grounds by Cook v. Principi*, 318 F.3d 1334 (Fed. Cir. 2002).

During the course of adjudication, all reasonable doubt is resolved in favor of the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. Many courts, including the Supreme Court, have recognized that "the character of the veterans' benefits statutes is strongly and uniquely pro-claimant." *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) (citing *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196 (1980); *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 285 (1946)). Congress expects the VA to "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." *Id.* (quoting H.R.Rep. No. 100–963, at 13 (1988)).

Congress has precluded adversarial concepts from the process, such as cross examination, evidentiary rules, or strict adherence to a burden of proof. *Id.* at 1363. The standard to award 1151 benefits is interpreted broadly. Benefits are awarded pursuant to 38 U.S.C. § 1151(a) if:

> **(1)** the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility. . . and the proximate cause of the disability or death was--
> **(A)** carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; **or**
> **(B)** an event not reasonably foreseeable; (emphasis added).

Accordingly, benefits may be awarded pursuant to a finding of carelessness, negligence, lack of proper skill, error in judgment, similar instance of fault, <u>or</u> an event not reasonably foreseeable. None of these terms are defined by statute or regulation, nor is there a specific burden of proof that must be met. There is no expert requirement like there is in state and federal court.

To assist Mr. Mahaney with his benefits claim, the VA had Ms. Coleman review Mr. Mahaney's VA medical records. (Coleman Declaration, Exhibit 2). She did not consult any doctor in forming her opinions. *Id.* She found that Mr. Mahaney's injury "was as likely as not the result

3

of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination." This language, mimicking § 1151, came from a prompt in the VA's electronic record system. Ms. Coleman did not choose this wording herself. *Id.* It is automatically generated on the electronic forms for C & P exams. *Id.* Ms. Coleman did not identify specific grounds for her conclusion. She did not speak with Dr. Smith or Dr. Haydel, nor did she consult any neurosurgeon as part of her review. *Id.* For plaintiffs to attempt to use these findings as an admission of liability by the VA is improper. Ms. Coleman is not qualified to opine as to the standard of care for a neurosurgeon in an FTCA medical malpractice case. She was merely assisting Mr. Mahaney in obtaining 1151 benefits, which is statutorily required of the VA.

Plaintiffs' Response incorrectly asserts that the C & P findings are dispositive as to the VA's negligence. This argument has been rejected repeatedly. *Littlejohn v. United States*, 321 F.3d 915 (9th Cir. 2003); *Butler v. United States*, 702 F.3d 749 (4th Cir. 2012) (adopting the same holding as the Ninth Circuit in *Littlejohn*); *see also Sweet v. United States*, 687 F.2d 246, 248-49 (8th Cir. 1982) (50% disability award not an admission due to lesser burden of proof); *Faughnan v. Big Apple*, 828 F. Supp. 155 (E.D. N.Y. 1993) (VA disability benefits decision is not dispositive of negligence.).

In *Littlejohn*, a veteran was awarded 1151 benefits for disabilities related to strokes he had at a VA hospital. Littlejohn had a C & P examination, although his was conducted by a VA physician, not a nurse practitioner.[1] The C & P exam provided a sufficient basis to award benefits under § 1151, resolving any reasonable doubts in favor of Littlejohn. *Id.* at 918.

---

[1] The defendant did not challenge the admissibility of the C & P exam findings before the district court, perhaps because the C & P examiner was a physician. However, the district court questioned whether the C & P opinions of a physician would even be admissible under *Daubert* if the issue had been raised. Brief for Appellee, *Littlejohn v. U.S.*, No. 01-16265, 2002 WL 32103346, at *12 (D. Nev., April 25, 2002) (quoting E.R. at 137).

4

Littlejohn subsequently filed an FTCA tort claim. At trial, he sought a directed verdict, arguing the United States had admitted fault in the C & P exam. The district court entered a judgment in favor of the United States, denying plaintiff's motion. On appeal, the Ninth Circuit disagreed with Littlejohn, holding that disability findings cannot be dispositive of negligence in an FTCA action because of the significant difference between the statutory purposes underlying 1151 disability benefits and an FTCA claim. *Id.* The Court reasoned:

> The structure of the disability benefit process prevented the VA from raising a causation defense at that time. Disability hearings are *ex parte* and non-adversarial. Evidence presented in a § 1151 benefits hearing is limited to information presented by the claimant and certain types of information discovered by the VA. The VA is not authorized to develop evidence for the purpose of challenging the claimant, but rather is required to "assist a claimant in developing the facts pertinent to [his or her] claim.". . . This claimant-friendly system provides no opportunity for the VA to develop and offer evidence of the kind that eventually proved the undoing of Littlejohn's FTCA claim. *Id.*[2]

The 1151 benefits claim process is not analogous in any respect to an FTCA malpractice claim, which requires plaintiffs to establish standard of care, breach and causation by a preponderance of the evidence.[3] Giving any weight to 1151 disability findings in an FTCA medical malpractice action is contrary to Congress's intent and the purpose of these benefits. They are meant to quickly compensate injured veterans without considerable scrutiny of the medical care at issue. Because the standards and purpose of these benefits differ so significantly from an FTCA malpractice claim, courts have prohibited the use of these findings to establish negligence against the VA in federal court. *Littlejohn,* 321 F.3d 915; *Butler,* 702 F.3d 749; *Sweet*, 687 F.2d 246; *Faughnan*, 828 F. Supp. 155.

---

[2] Internal citations: *Manio v. Derwinski,* 1 Vet. App. 140, 144 (1991); *Forshey v. Principi,* 284 F.3d 1335, 1355 (Fed. Cir.), *cert. denied,* 537 U.S. 823 (2002); 38 C.F.R. §§ 3.103, 3.159, 3.328.

[3] To establish a claim for medical malpractice under Louisiana law, the plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant, (2) that the defendant breached that standard of care, and (3) a causal connection between the breach and the resulting injury. *Willis v. Smith,* 999 So.2d 1244 (La. 2 Cir. 2009) (citing La. R.S. 9:2794).

Plaintiffs argument also focuses on Ms. Coleman's statements regarding some indeterminate degree of fault "on the part of the VA." (*See* Doc. 30, p. 5). Plaintiffs interpret this to mean fault by Dr. Haydel, not Dr. Smith, since Dr. Smith was an independent contractor. However, plaintiffs incorrectly assume that 1151 benefits can only be awarded for actions of VA employees. Section 1151 benefits may be awarded to veterans regardless of whether the conduct at issue was by a VA employee or by an independent contractor. 38 U.S.C. § 1151(a); *see also* brochure, Exhibit 1. Section 1151 compensates for disabilities caused "either by a Department employee or in a Department facility." 38 U.S.C. § 1151(a). Unlike FTCA medical malpractice claims, a patient is entitled to 1151 benefits based upon actions by both VA employees and independent contractors working at VA facilities. Ms. Coleman's assessment was not limited to the treatment by Dr. Haydel or VA employees. (Ex. 2). Thus, plaintiffs' assumption that Ms. Coleman's findings "on the part of the VA" could only be applicable to Dr. Haydel is incorrect.

The entire premise of plaintiffs' Response – that the VA admitted negligence on the part of Dr. Haydel through awarding Mr. Mahaney 1151 disability benefits – is flawed. To give these findings weight in an FTCA case clearly violates precedent and Congress's express intent. The question then becomes whether these findings have any evidentiary value whatsoever for purposes of summary judgment. On its face, the opinion of a nurse practitioner regarding treatment by a neurosurgeon is inadmissible under *Daubert*, Fed. R. Evid. 702 and Louisiana medical malpractice law. Thus, not only is this evidence impermissible to establish fault, but it is also inadmissible for any other purpose.

2. **The Compensation and Pension Exam findings are inadmissible, and cannot create a factual dispute for purposes of defeating defendant's summary judgment motion.**

Under Louisiana and federal law, it is well-established that a nurse practitioner is not qualified to opine as to the standard of care for a neurosurgeon. Plaintiffs propose Ms. Coleman's

6

C & P findings as though they constitute expert opinions. Yet, Ms. Coleman has no education, experience or training which would qualify her as an expert in neurosurgery. While her C & P exam was sufficient for the very low threshold of an 1151 claim, it does not hold up against federal and state evidentiary prerequisites. The Court cannot consider the C & P exam findings in ruling on defendant's motion for summary judgment, because only admissible evidence can create factual disputes to defeat summary judgment. *Roucher v. Traders & General Ins. Co.*, 235 F.2d 423, 424 (5th Cir. 1956); Fed. R. Civ. P. 56(c)(1)-(2).

Federal Rule of Evidence 702 requires that a witness be qualified "by knowledge, skill, experience, training, or education" as a prerequisite to the admissibility of opinion evidence. In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed district courts to function as gatekeepers and permit only reliable and relevant expert testimony into evidence. *Id.* at 590-93. Plaintiffs must establish the admissibility by a preponderance of the evidence, and "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999); *United States v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997); *Sullivan v. Rowan Cos.*, 952 F.2d 141, 144 (5th Cir. 1992).

Moreover, when a malpractice claim is asserted against a particular specialist, "only those qualified in that specialty may offer expert testimony and evidence of the applicable standard of care." *Id.* (quoting *Primeaux v. St. Paul Fire & Marine Ins. Co.,* 862 So.2d 496, 503 (La. App. 2003))); *see also Ardoin v. Hartford Accident & Indemn. Co.,* 360 So.2d 1331, 1340 (La. 1978.). Louisiana medical malpractice law requires that "where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care

7

ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty." La. R.S. 9:2794; *see also, e.g., Taplin v. Lupin*, 700 So. 2d 1160 (La. App. 4th Cir. 1997) (Registered nurse was not qualified to give expert testimony regarding standard of care for an emergency room physician); *Sandell v. Hooter*, 692 So. 2d 474 (La. App. 3d Cir. 1997) (Nurse was not qualified to testify regarding the specialties of neonatology and obstetrics); *Cleveland ex rel. Cleveland v. U.S.*, 457 F.3d 397, 403-405 (5th Cir. 2006) (Internal medicine doctor not qualified to testify on matters related to emergency medicine); *Wells v. Louisiana Dept. of Public Safety and Corrections*, 72 So.3d 910, 919 (La. App. 2d Cir. 2011) (Trauma surgeon not qualified to testify regarding the diagnosis of lung cancer).

There is no question that Fifth Circuit and Louisiana precedent preclude the admission of Ms. Coleman's C & P opinions at trial. She does not have a medical degree, much less the specific qualifications needed to critique a neurosurgical procedure. Accordingly, the C & P exam is neither reliable nor relevant in this action.

When Ms. Coleman developed her C & P findings, she was aiding the VA in its congressionally-mandated duty to assist veterans to obtain disability benefits. The statutory standards she applied are considerably lower than in this case. The nature of her review makes Ms. Coleman's C & P exam useless to evaluate the standard of care of a neurosurgeon in an FTCA medical malpractice action. Because Ms. Coleman's C & P exam findings would be inadmissible at trial, they are also inadmissible for purposes of summary judgment. *Roucher*, 235 F.2d at 424. Plaintiffs' argument regarding 1151 disability benefits and Ms. Coleman's C & P exam findings must be stricken from plaintiffs' Response as irrelevant and inadmissible.

### 3. Plaintiffs produced no evidence to show that Dr. Haydel acted independently to cause any of Mr. Mahaney's injuries.

Aside from the C & P exam findings, plaintiffs' only other argument was that Dr. Smith was not in the operating room at the time of the alleged injury, so he cannot be solely responsible. Direct contact is not a prerequisite to medical malpractice. Plaintiffs fail to appreciate that physicians are frequently responsible for actions carried out by subordinate providers. For example, physicians order medications and treatments which they never personally administer. Nevertheless, it is the physician's directive that would be considered negligent, not the act of administering the treatment.[4]

Because of the nature of the supervisor-resident relationship, Louisiana adopted the control test used in most jurisdictions. *Parmelee v. Kline*, 579 So. 2d 1008, 1020 (La. App. 5 Cir. 1991). The test is not whether the supervisor was present, nor whether the supervisor actually performed the procedure. Instead, the Court must assess *whether the supervisor controlled the resident's actions to a degree that the supervisor could have prevented the injury. Id.*

In this case, plaintiffs criticize the decision to use the Cloward drill, the failure to appreciate the complexity of the procedure, and the operative approach for the ACDF procedure. (Doc. 24, Exs. I & J). Defendant submitted testimony and an affidavit from Dr. Haydel confirming that these specific decisions were all made by Dr. Smith – decisions which Dr. Haydel as a medical resident

---

[4] Supervising physicians have been found directly responsible in various jurisdictions for medical negligence, even when not present during the medical procedures at issue. *See, e.g.*, *McCullough v. Hutzel Hospital*, 276 N.W.2d 569 (Mich. App. 1979) (upholding direct liability of supervising physicians who did not perform the patient's tubal ligation procedure, but who were responsible for supervising the resident physician performing the procedure); *Mozingo by Thomas v. Pitt County Memorial Hosp., Inc.*, 415 S.E.2d 341, 345 (N.C. 1992) (finding a duty exists for an on-call physician not present for the care at issue, and noting, "Large teaching hospitals, such as the Hospital in the present case, care for patients with teams of professionals, some of whom never actually come in contact with the treated patient. . ."); *Green v. Hall*, 119 A.D.3d 1366 (N.Y. App. Div. 4th Dep't 2014) (dismissing claim against medical resident because "'[a]lthough the evidence demonstrated that [the resident] played an active role in [the] procedure, it did not demonstrate the exercise of independent medical judgment'" by the resident. (quoting *Soto v. Andaz,* 8 A.D.3d 470, 471 (N.Y. App. Div. 2d Dep't. 2004))).

had no autonomy to change. (Doc. 24, Exs. C & G). Defendant further submitted contracts and guidelines which tasked Dr. Smith with responsibility to oversee Dr. Haydel. (Doc. 24, Exs. A, B & E). Plaintiffs did not respond with any admissible "depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, or other materials" to contradict the evidence submitted by defendant. *See* Fed. R. Civ. P. 56(c)(1). Plaintiffs merely argued that Dr. Smith was not present in the operating room for portions of the procedure which is Defendant's point as well. That is not sufficient to overcome summary judgment.

Unless a resident does something independently negligent, he is not liable for carrying out the directive of his supervisor. *See Parmelee*, 579 So. 2d at 1020; *Felice v. Valleylab, Inc.*, 520 So.2d 920 (La. 3 Cir. 1987). In this case, Dr. Smith had a contractual duty to supervise Dr. Haydel, and he had a duty of care to Mr. Mahaney as his patient. The only factual dispute in this case is whether the decisions made by Dr. Smith regarding the Cloward drill, the operative approach and the decision concerning what treatment was given in recovery were appropriate. Plaintiffs' criticisms concern Dr. Smith's medical judgment, and there are no factual disputes of record as to Dr. Haydel's actions in carrying out Dr. Smith's directives. As such, the United States cannot be liable for Dr. Smith's medical judgment, and summary judgment is appropriate.

        Respectfully submitted,

        STEPHANIE A. FINLEY
        UNITED STATES ATTORNEY

BY:    *s /Andolyn R. Johnson*
        ANDOLYN R. JOHNSON (#ky95189)
        Assistant United States Attorney
        300 Fannin Street, Suite 3201
        Shreveport, Louisiana 71101-3068
        Telephone:  (318) 676-3610
        Facsimile:  (318) 676-3642
        Email:  andolyn.johnson@usdoj.gov

        JENNIFER B. FREDERICK (#23633)
        Assistant United States Attorney
        800 Lafayette Street, Suite 2200
        Lafayette, LA 70501
        Telephone:  (337) 262-6618
        Facsimile:  (337) 262-6693
        Email:  jennifer.frederick@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on December 14, 2016 a copy of the above and foregoing motion was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

        *s/ Andolyn R. Johnson*
        ANDOLYN R. JOHNSON
        Assistant United States Attorney